**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

No objections to this Report and Recommendation ("R&R") have been filed. I have reviewed it for clear error and find no error, clear or otherwise. Accordingly, the R&R is adopted as the decision of the Court. The Clerk of Court is respectfully directed to enter judgment for Plaintiffs as outlined in the R&R and to close the case.

HERMEL A. CORDOVA, on behalf of himself
and others similarly situated,

                                    **Plaintiffs,**                                    **14 Civ. 8789 (CS) (LMS)**

        - against -                                    **REPORT AND**
                                                       **RECOMMENDATION**

D&D RESTAURANT, INC.,
DOYLER & DUNNEY'S, INC., doing business as                SO ORDERED.
D&D'S RESTAURANT & PUB,
THOMAS J. SCHUNKE, AND ROY O'DONOVAN,

                                    **Defendants.**                CATHY SEIBEL, U.S.D.J.

                                                                   10/29/15

**TO:   THE HONORABLE CATHY SEIBEL**
       **UNITED STATES DISTRICT JUDGE**

       This action was commenced on November 4, 2014, by Plaintiff Hermel A. Cordova

("Plaintiff"). Complaint (Docket #1). The Complaint alleges claims under the Fair Labor

Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid overtime

compensation, liquidated damages, prejudgment and post-judgment interest, and attorneys' fees

and costs against Defendants D&D Restaurant, Inc. ("D&D") and Doyler & Dunney's, Inc.

("Doyler & Dunney's"), doing business as D&D's Restaurant & Pub (collectively "the corporate

defendants" or "D&D's Restaurant"), Thomas J. Schunke ("Schunke"), and Roy O'Donovan

("O'Donovan"). Id. ¶¶ 1-2.[1]

       On January 13, 2015, the Clerk of the Court issued a certificate of default as to D&D,

Doyler & Dunney's, and Schunke (collectively "Defendants"). Docket # 6. The issue of the

amount of damages and attorneys' fees and costs to which the Plaintiff may be entitled was

---

[1] O'Donovan was never served with the Complaint and, therefore, was never made a party to the action.

1

referred to the undersigned for an inquest on damages. Docket # 9. On April 30, 2015, I held a status conference at which Defendants failed to appear. <u>See</u> Docket Sheet, Minute Entry, April 30, 2015. On May 26, 2015, Plaintiff filed papers in support of the requested damages and attorneys' fees and costs. <u>See</u> Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") (Docket # 16); Declaration of Peter H. Cooper, Esq. ("Cooper Decl.") (Docket # 17); Affidavit of Hermel A. Cordova ("Cordova Aff.") (Docket # 18). To date, the Court has received nothing from Defendants.

For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that a default judgment should be entered against Defendants in the amount of $75,839.60 in compensatory and liquidated damages, plus attorneys' fees, costs, prejudgment interest, and post-judgment interest as set forth herein.

<u>**BACKGROUND**</u>

The following facts adduced from the Complaint are taken as true for purposes of this inquest.

Plaintiff is a resident of Rockland County, New York. Compl. ¶ 5. D&D is a New York domestic business corporation with its principal place of business in New City, New York. <u>Id.</u> ¶ 6. Doyler & Dunney's is likewise a New York domestic business corporation with its principal place of business in New City, New York. <u>Id.</u> ¶ 7. Schunke is an owner, officer, director, and/or managing agent of the corporate defendants. <u>Id.</u> ¶ 8. D&D and Doyler & Dunney's operate D&D's Restaurant and Pub ("D&D's Restaurant") and function as a "single enterprise." <u>Id.</u> ¶¶ 10-13. Upon information and belief, D&D is a successor corporation to Doyler & Dunney's. <u>Id.</u> ¶ 14.

2

In or about March, 1999, Defendants hired Plaintiff to work as a cook and cleaner at

D&D's Restaurant, which position he held from March, 1999, through late June, 2014. Id. ¶¶ 20-

21.  Plaintiff worked over 40 hours per week, generally working shifts of between 10 to 15 hours

a day, six days a week. Id. ¶ 22.  Between 1999 and 2011, Plaintiff was paid $10.00 an hour for

60 working hours, for a total of $600 per week. Id. ¶ 23.  In 2012, Plaintiff's wages were reduced

to $550.00 per week, but in 2013 and 2014, Plaintiff's hours were increased to 90 hours per

week, and Plaintiff was paid $1,000 per week. Id.  Plaintiff was not paid overtime compensation

at the rate of time and one-half for the work performed above 40 hours per week as required by

the FLSA and the NYLL. Id. ¶¶ 24-25.  At all relevant times, Defendants failed to maintain

accurate and sufficient time records or accurate and complete payroll records. Id. ¶¶ 26, 32.

Defendants also failed to provide Plaintiff with an accurate wage statement as required by the

NYLL. Id. ¶¶ 30, 53-55.[2]

## DISCUSSION

### I.  Legal Standard

Upon the default of a party, a court must accept as true all factual allegations in the

complaint, except those relating to damages, and a plaintiff is entitled to all reasonable inferences

from the evidence offered, but the court nonetheless has discretion to decide whether the facts set

forth in the complaint state a valid claim. See, e.g., Au Bon Pain Corp. v. Artect, Inc., 653 F.2d

61, 65 (2d Cir. 1981); see also, e.g., Nwagboli v. Teamwork Transp. Corp., No. 08 Civ. 4562,

2009 WL 4797777, at *2 (S.D.N.Y. Dec. 7, 2009) ("When assessing the propriety of a damages

---

[2] Plaintiff asserts a claim for violation of the New York Wage Theft Prevention Act written notice requirements in
the Complaint, Compl. ¶¶ 53-57, but this claim appears to have been abandoned, as it is not included in Plaintiff's
Proposed Findings.

award after a judgment by default is entered, a court must be satisfied initially that the allegations of the complaint are well-pleaded.") (internal quotation marks and citation omitted).

"A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, and the sole issue that remains before the court is whether the plaintiff can show, with 'reasonable certainty,' entitlement to the amount of damages [he or she] seeks." Trinity Biotech, Inc. v. Reidy, 665 F. Supp. 2d 377, 380 (S.D.N.Y. 2009) (citations omitted). Fed. R. Civ. P. 54(c) requires that "a default judgment must not differ in kind from, or exceed in amount, that [which] is demanded in the pleadings." GAKM Res. LLC. v. Jaylyn Sales Inc., No. 08 Civ. 6030, 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009) (internal quotation marks and citations omitted). In determining the amount of damages to be awarded, "under Rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it [has] ensured that there [is] a basis for the damages specified in the default judgment.' " Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

## II. Analysis

### A.   Liability under the FLSA and the NYLL

The allegations in the Complaint establish Defendants' liability under the FLSA and the NYLL for failure to pay Plaintiff statutorily required overtime compensation.

"To establish a claim under the FLSA for . . . overtime compensation, a plaintiff must show that he or she is an 'employee' of the defendant within the meaning of the FLSA and that the defendant is an 'enterprise engaged in commerce.' " Fermin v. Las Delicias Peruanas Rest., Inc., No. 14–CV–0559 (RRM)(VMS), 2015 WL 1285960, at *10 (E.D.N.Y. Mar. 19, 2015) (citations omitted). As a cook and cleaner, Plaintiff was a covered, non-exempt employee under

the FLSA.  See 29 U.S.C. § 203(e) ("the term 'employee' means any individual employed by an employer"); see also, e.g., Fermin, 2015 WL 1285960, at *11 (in the context of granting default judgment on FLSA and NYLL claims, the court noted that "Plaintiffs' respective jobs as waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA") (citing cases).  Moreover, each of the Defendants qualifies as an "employer" under the FLSA.  Under the statute, an "employer" is defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

For the purposes of establishing liability for overtime compensation, Plaintiff has alleged that D&D's Restaurant "was, and continues to be, an 'enterprise engaged in commerce' within the meaning of the FLSA."  Compl. ¶ 16.  Plaintiff additionally alleges that "Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a)," id. ¶ 34, and that "Defendants have had gross revenues in excess of $500,000," id. ¶ 36.  The FLSA defines an "enterprise engaged in commerce" as an enterprise that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done [of] not less than $500,000 . . . ." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).  A restaurant with over $500,000 in annual sales satisfies this statutory definition.  See Fermin, 2015 WL 1285960, at *12 ("[I]t is reasonable to infer that the myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State.").[3]  Thus, the corporate defendants are covered employers under the FLSA.

---

[3] In contrast, the NYLL "does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." Fermin, 2015 WL 1285960, at *12 (citation omitted); see also Castellanos v. Mid

As to Schunke, alleged to be an owner, officer, director, and/or managing agent of the corporate defendants, whether he qualifies as an employer under the FLSA depends on whether he "possessed the power to control the workers in question." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citation omitted); see also Guallpa v. N.Y. Pro Signs Inc., No. 11 Civ. 3133 (LGS)(FM), 2014 WL 2200393, at *3 (S.D.N.Y. May 27, 2014) ("[T]he overwhelming weight of authority is that a corporate officer with operational control . . . is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.") (internal quotation marks and citations omitted), adopted by 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).  Courts deciding this issue apply an "economic reality" test, in which the relevant factors to be considered include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman, 172 F.3d at 139 (citation omitted).  "No one of the four factors standing alone is dispositive.  Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." Id. (citation omitted).  Plaintiff alleges that Schunke owns D&D's Restaurant and "manages and makes all business decisions, including but not limited to, the decisions of what salary the employees will receive and the number of hours the employees will work." Compl. ¶ 28.  Thus, Plaintiff has established that Schunke and the corporate defendants are jointly and severally liable as Plaintiff's employers under the FLSA.

"The NYLL defines 'employer' and 'employee' in the same broad manner as the FLSA." Campos v. Lemay, No. 05 Civ. 2089, 2007 WL 1344344, at *4 (S.D.N.Y. May 7, 2007)

---

Bronx Cmty. Hous. Mgmt. Corp., No. 13 Civ. 3061 (JGK), 2014 WL 2624759, at *2 (S.D.N.Y. June 10, 2014) ("NYLL does not require that an employer be engaged in interstate commerce or meet thresholds of minimum annual sales. NYLL § 651(5)-(6)."); N.Y. Lab. Law §190(3) (" 'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service.").

6

(citations omitted); see also Jiao v. Chen, No. 03 Civ. 0165(DF), 2007 WL 4944767, at *9 n. 12

(S.D.N.Y. Mar. 30, 2007) ("As there is general support for giving FLSA and the New York

Labor Law consistent interpretations, courts have interpreted the definition of 'employer' under

the New York Labor Law coextensively with the definition used by the FLSA.") (internal

quotation marks, alterations, and citations omitted).[4]  Accordingly, Plaintiff qualifies as a

covered employee and Defendants qualify as covered employers under the NYLL as well.

Plaintiff alleges that throughout his employment he worked well in excess of 40 hours per

week but was never paid overtime compensation.  Both the FLSA and the NYLL require

employers to pay non-exempt employees who work in excess of 40 hours per workweek at least

150% of their regular rate of pay for those excess hours.  See 29 U.S.C. § 207(a)(1); N.Y. Comp.

Codes R. & Regs. tit. 12, § 142-2.2.  Plaintiff's burden of proof under both federal and state law

as to wages and hours worked may be met by reliance on recollection alone; it is up to the

employer to provide evidence in order to "negative the reasonableness of the inference to be

drawn from the employee's evidence." Doo Nam Yang v. ACBL Corp., 427 F.Supp.2d 327, 332,

335 (S.D.N.Y. 2005) (internal quotation marks omitted) (quoting Anderson v. Mt. Clemens

Pottery Co., 328 U.S. 680, 688 (1946)).  "If the employer fails to do so, the court may enter

judgment in the employee's favor, using [his or] her recollection to determine damages, even

though the result be only approximate." Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777

(JGK)(JLC), 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012) (internal quotation marks and

citations omitted).

---

[4] As one district court recently noted, "While the New York Court of Appeals has not yet resolved whether the
NYLL's standard for employer status is coextensive with the FLSA's . . . there is no case law to the contrary."
Fermin, 2015 WL 1285960, at *15 (internal quotation marks and citations omitted).

Where, as here, Defendants have defaulted, Plaintiff's representations as to the dates and number of hours that he worked and the wages that he received are accepted as true.[5]  Thus, Plaintiff has succeeded in stating claims for violations of the FLSA and the NYLL based on Defendants' failure to pay him overtime compensation, and Defendants may be held liable for such violations.

**B.   <u>Statute of Limitations</u>**

Although Plaintiff brings his claims under both the FLSA and the NYLL, the FLSA has only a two-year statute of limitations, while the NYLL has a six-year statute of limitations. <u>Compare</u> 29 U.S.C. § 255(a) <u>with</u> N.Y. Lab. Law §198(3).  A three-year statute of limitations applies in FLSA cases involving "willful" violations.  29 U.S.C. § 255(a).  In the Complaint, Plaintiff alleges that "Defendants knowingly and willfully failed to pay Plaintiff lawfully earned overtime compensation in contravention of the FLSA and New York Labor Law."  Compl. ¶ 18; <u>see also id.</u> ¶¶ 25, 32, 41, 46, 50 (alleging willful conduct).  "Where a default judgment is entered against a defendant under the FLSA, allegations that the violations were willful are deemed admitted."  <u>Castellanos</u>, 2014 WL 2624759, at *3 (internal quotation marks and citation omitted). Moreover, "[t]he standard for willfulness under NYLL does not appreciably differ from that of the FLSA."  <u>Id.</u> (internal quotation marks and citation omitted).

Accordingly, since Plaintiff filed his Complaint on November 4, 2014, Plaintiff may recover unpaid overtime compensation under the FLSA dating back three years, or from November 4, 2011, through June 20, 2014, the date on which his employment ended, <u>see</u> Cordova Aff. ¶ 3 ("I was employed by D&D Restaurant and Pub from approximately 1999

---

[5] Moreover, the Court must rely on Plaintiff's recollection as he "was paid 'off the books,' partly in cash," and "beginning in 2011, [he] was paid entirely in cash.  [He] never received a statement of hours worked or wages paid." Cordova Aff. ¶ 4.

through on or around June 20, 2014."). Plaintiff may recover unpaid overtime compensation under the NYLL dating back six years, and thus may recover such compensation under that statute from November 4, 2008, through June 20, 2014. "A plaintiff may not recover under both statutes [the FLSA and the NYLL] for the same injury. He [or she] may, however, elect to recover damages under the statute that provides for the greater recovery." Guallpa, 2014 WL 2200393, at *4 (citations omitted). In his submission to the Court, Plaintiff notes that he seeks damages under the NYLL and its more generous statute of limitations. See Proposed Findings at 2 ("For purposes of judgment in this matter plaintiff focuses on the most recent six (6) years. Plaintiffs can recover for a period of six (6) years under the statute of limitations afforded by the New York Labor Law."). Accordingly, the Court will calculate Plaintiff's damages for unpaid overtime compensation under the NYLL. See Guallpa, 2014 WL 2200393, at *4 ("Because the NYLL statute of limitations is longer, it provides Guallpa damages for the entirety of his employment. The Court therefore should calculate Guallpa's overtime damages under the NYLL.") (footnote omitted).

### C.   Unpaid Overtime Compensation

Plaintiff seeks recovery of one and one-half times his regular rate for each of his overtime hours, as required under both the FLSA and the NYLL, 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. In support of his motion for entry of default judgment, Plaintiff has submitted an affidavit, see Cordova Aff., and his counsel has submitted a damages worksheet, see Cooper Decl. Ex. A.

Plaintiff avers that from November 4, 2008, through the end of 2011, he worked 60 hours per week and was paid $10 per hour, or $600 per week. Cordova Aff. ¶¶ 3-4; Compl. ¶ 23. Had Plaintiff been paid one and one-half times his regular rate for each of his overtime hours,

Plaintiff would have received $700 per week ($10 per hour for 40 hours, plus $15 per hour for the additional 20 hours). Defendants therefore owe Plaintiff $100 for each week worked during this period. According to Plaintiff's damages worksheet, Plaintiff worked 8 weeks in 2008 and all 52 weeks of the year in 2009, 2010, and 2011. Cooper Decl. Ex. A. However, the year 2009 actually had 53 weeks. See http://www.timeanddate.com/calendar/custom.html (U.S. calendar for 2009 formatted to show week numbers) (last visited Oct. 2, 2015). Consequently, Plaintiff is entitled to $16,500 in unpaid overtime compensation for this period ($100 multiplied by 165 weeks).

In 2012, Plaintiff continued to work 60 hours per week but received wages of only $550.00. Cordova Aff. ¶¶ 3-4; Compl. ¶ 23. Thus, he was paid an hourly wage of $9.17 ($550/60 hours). Had Plaintiff been paid one and one-half times his regular rate for each of his overtime hours, Plaintiff would have received $642 per week ($9.17 per hour for 40 hours, plus $13.76 per hour for the additional 20 hours). Defendants therefore owe Plaintiff $92 for each week worked during this period.[6] According to the damages worksheet, Plaintiff worked a full 52 weeks in 2012 as well. Cooper Decl. Ex. A. Consequently, Plaintiff is entitled to $4,784 in unpaid overtime compensation for this period ($92 multiplied by 52 weeks).

From the beginning of 2013, to June 20, 2014, Plaintiff worked 90 hours per week and received wages of $1,000. Cordova Aff. ¶¶ 3-4; Compl. ¶ 23. Thus, he was paid an hourly wage of $11.11 ($1,000/90 hours). Had Plaintiff been paid one and one-half times his regular rate for each of his overtime hours, Plaintiff would have received $1,277.90 per week ($11.11 per hour

---

[6] The overtime rate calculated by Plaintiff is $13.75, but it should be rounded up to $13.76 (150% of $9.17 is $13.755). This, in turn, makes the unpaid overtime amount owed equal $92 per week, as opposed to the $91.67 per week set forth in the damages worksheet, see Cooper Decl. Ex. A.

for 40 hours, plus $16.67 per hour for the additional 50 hours).[7]  Defendants therefore owe

Plaintiff $277.90 for each week worked during this period.  Once again, the damages worksheet

calculations are for a full 52 weeks in both 2013 and 2014.  Cooper Decl. Ex. A.  However,

Plaintiff states in his sworn affidavit that his employment ended on or about June 20, 2014.

Cordova Aff. ¶ 3.  Thus, Plaintiff worked only 25 weeks in 2014, for a total of 77 weeks in 2013

and 2014 combined.  Accordingly, Plaintiff is entitled to $21,398.30 in unpaid overtime

compensation for this period ($277.90 multiplied by 77 weeks).

Based on the foregoing, I conclude, and respectfully recommend that Your Honor should

conclude, that Plaintiff should be awarded $42,682.30 in total unpaid overtime compensation

($16,500 plus $4,784 plus $21,398.30).

### D.    Liquidated Damages

Where, as here, Defendants' violations of the FLSA and the NYLL are deemed willful,

see Section II.B., supra, both the FLSA and the NYLL allow for the award of liquidated

damages.  "Under the FLSA, liquidated damages in an amount equal to compensatory damages

are mandatory, unless an employer demonstrates that it acted in good faith."  Guallpa, 2014 WL

2200393, at *6 (citing 29 U.S.C. §§ 216(b), 260); see also N.Y. Lab. Law § 198(1-a) ("In any

action instituted in the courts upon a wage claim by an employee . . . in which the employee

prevails, the court shall allow such employee to recover . . . unless the employer proves a good

faith basis to believe that its underpayment of wages was in compliance with the law, an

additional amount as liquidated damages equal to one hundred percent of the total amount of the

wages found to be due.").  Given the six-year statute of limitations applicable to Plaintiff's NYLL

---

[7] In the damages worksheet, Plaintiff erroneously calculates the amount of unpaid overtime owed per week as $277.78, but $16.67 multiplied by 50 hours equals $833.50; therefore, Plaintiff's weekly compensation should have been $1,277.90 ($11.11 per hour for 40 hours, or $444.40, plus $833.50), and the amount of unpaid overtime owed per week is $277.90 ($1,277.90 minus $1,000).

claim, Plaintiff states that he "seeks only New York State [l]iquidated [d]amages," and accordingly, seeks liquidated damages under the NYLL "for violations that accrued during the six (6) years that preceded the filing of the complaint November 4, 2014." Proposed Findings at 5. Thus, the Court finds that Plaintiff is entitled to liquidated damages for the period of November 4, 2008, to June 20, 2014 (the date on which Plaintiff's employment ended).

Prior to April 9, 2011, the NYLL allowed for the recovery of liquidated damages in the amount of 25% of the total of any underpayment of wages. However, effective April 9, 2011, the statute was amended to raise the amount of recoverable liquidated damages from 25% to 100% of any underpayment. See Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 143 (2d Cir. 2013) (citing S.B. 8380, 233rd Legis., Reg. Sess. (N.Y. 2010)). The Second Circuit has held that the amendment applies only prospectively. Id. at 143-44 ("Because there is no support for retroactivity in either the text or the legislative history, we hold that the 2011 amendment is not retroactive.") (footnote omitted).

Plaintiff is therefore entitled to liquidated damages in the amount of 25% of total unpaid overtime compensation owed for the weeks that he worked from November 4, 2008, to April 8, 2011, a period of 127 weeks.[8] Because, as explained above, Defendants owe Plaintiff $100 of unpaid overtime for each week worked during this period, Defendants owe Plaintiff $25 in liquidated damages for each of these weeks, for a total of $3,175 in liquidated damages for this period.

Plaintiff is additionally entitled to liquidated damages equal to 100% of total unpaid overtime compensation owed for the weeks he worked from April 9, 2011, to June 20, 2014, a

---

[8] Plaintiff's damages worksheet erroneously calculates liquidated damages at 25% through week 44 of 2011 (the week of November 4, 2011), instead of through week 14 (the week of April 8, 2011).

period of 167 weeks.  As explained above, for each week worked through 2011, Defendants owe

Plaintiff $100, and therefore, Defendants owe Plaintiff $100 in liquidated damages for each of

the 38 weeks worked between April 9, 2011, and the end of that year, for a total of $3,800 in

liquidated damages.

Defendants owe Plaintiff $92 of unpaid overtime for each week worked in 2012, and

therefore owe Plaintiff a further $92 in liquidated damages for each of the 52 weeks worked in

that year, for a total of $4,784 in liquidated damages.

Defendants owe Plaintiff $277.90 of unpaid overtime for each week worked in 2013 and

in 2014 through June 20, 2014, and therefore owe Plaintiff a further $277.90 in liquidated

damages for each of the 77 weeks worked during this period, for a total of $21,398.30 in

liquidated damages.

In light of the foregoing, I conclude, and respectfully recommend that Your Honor should

conclude, that Plaintiff should be awarded a total of $33,157.30 ($3,175 + $3,800 + $4,784 +

$21,398.30) in liquidated damages under the NYLL for the entire relevant period.

### E.   Prejudgment Interest

The Complaint alleges that Plaintiff seeks prejudgment interest on his FLSA and NYLL

claims, Compl. ¶¶ 1-2, 46 & Prayer for Relief, and Plaintiff notes in his Proposed Findings that

prejudgment interest is among the damages he seeks to recover, see Proposed Findings at 1.  "It

is well settled that in an action for violations of the [FLSA] prejudgment interest may not be

awarded in addition to liquidated damages."  Begum v. Ariba Disc., Inc., No. 12cv6620 (DLC),

2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (quoting Brock v. Superior Care, Inc., 840 F.2d

1054, 1064 (2d Cir. 1988)).  "Under the NYLL, however, prejudgment interest may be awarded

pursuant to the New York Civil Practice Law and Rules ('N.Y.C.P.L.R.') in addition to liquidated

damages." Id. (citing Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999)).

"This remains true even where liability is found not only under the NYLL but also under the

FLSA." Id. (citations omitted).  Under the NYLL, prejudgment interest is "applied against

compensatory damages only."  Castellanos, 2014 WL 2624759, at *5 (citations omitted).

Prejudgment interest is recoverable under New York law at the rate of 9 percent per

annum from either "the earliest ascertainable date the cause of action existed," or "[w]here such

damages were incurred at various times, interest shall be computed upon each item from the date

it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y.

C.P.L.R. §§ 5001(b), 5004.  In this case, damages "were incurred at various times," as

Defendants failed to pay Plaintiff his overtime wages over the course of a number of years.

Courts have used the midpoint of a plaintiff's period of employment as the intermediate date

from which to calculate prejudgment interest.  See, e.g., Guallpa, 2014 WL 2200393, at *7.

Here, the midpoint of Plaintiff's period of employment is August 28, 2011.

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude,

that Plaintiff is entitled to prejudgment interest on his award of unpaid overtime compensation

calculated from August 28, 2011, until the date of entry of judgment, at the rate of 9 percent per

annum.

**F.**     **Post-judgment Interest**

As with prejudgment interest, the Complaint alleges that Plaintiff seeks post-judgment

interest on his FLSA and NYLL claims, Compl. ¶¶ 1-2 & Prayer for Relief, and Plaintiff notes in

his Proposed Findings that post-judgment interest is among the damages he seeks to recover, see

Proposed Findings at 1.  Under federal law, "[i]nterest shall be allowed on any money judgment

in a civil case recovered in a district court."  See 28 U.S.C. § 1961(a).  The Second Circuit has

held that an award of post-judgment interest is "mandatory," and should be awarded at the

statutory rate prescribed by section 1961.  Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008)

(citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100 (2d Cir. 2004)).  Post-judgment

interest is awarded in FLSA/NYLL cases such as this.  See, e.g., Fermin, 2015 WL 1285960, at

*29; Begum, 2015 WL 223780, at *3.

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude,

that Plaintiff is entitled to post-judgment interest calculated in accordance with 28 U.S.C. § 1961.

### G.   Attorneys' Fees and Costs

Plaintiff requests an award of attorneys' fees and costs in the amount of $10,431.

Proposed Findings at 6-7.

### 1.   Attorneys' Fees

Both the FLSA and the NYLL allow a successful plaintiff to recover reasonable

attorneys' fees.  See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any

judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

defendant, and costs of the action."); N.Y. Lab. Law § 198(1-a) ("In any action instituted in the

courts upon a wage claim by an employee or the commissioner in which the employee prevails,

the court shall allow such employee to recover . . . all reasonable attorney's fees . . .").  As the

Second Circuit has stated, "The district court retains discretion to determine . . . what constitutes

a reasonable fee."  Millea v. Metro North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting

LeBlanc–Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)) (internal quotation marks

omitted).  A reasonable fee is calculated by taking "the number of hours reasonably expended on

the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433

(1983). "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the

product of a reasonable hourly rate and the reasonable number of hours required by the case—
creates a 'presumptively reasonable fee.' " Millea, 658 F.3d at 166 (citing Arbor Hill Concerned
Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008) and Perdue v.
Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1673 (2010)). "A detailed explanation of the lodestar
calculation is unnecessary, but compliance with the Supreme Court's directive that fee award
calculations be 'objective and reviewable,' implies the district court should at least provide the
number of hours and hourly rate it used to produce the lodestar figure." Id. at 166-67 (citing
Perdue, 130 S. Ct. at 1674). "[T]he fee applicant bears the burden of establishing entitlement to
an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S.
at 437.

In this case, Plaintiff seeks to recover fees for work performed by his attorney, Peter H.
Cooper, and Cooper's assistant, Jennett Pena.  Proposed Findings at 6-7.  However, the invoice
for legal services submitted by Plaintiff does not support an award of fees for Pena's work.  The
invoice includes initials for each person to whom a given time entry is attributable.  Thus,
Cooper's initials, PHC, are listed for almost all of the entries in the "Date & Attorney" column of
the invoice.  See Cooper Decl. Ex. B.  The only other initials listed in that column, however, are
"MZ."  Id.  Plaintiff nowhere identifies "MZ," and there are no entries attributable to "JP,"
Jennett Pena.  Accordingly, the Court declines to recommend an award of fees for the 1.3 hours
of time attributable to "MZ."

### a.     Reasonableness of Hourly Rates

In determining if the requested hourly rate is reasonable, a court must analyze whether
the "requested rates are in line with those prevailing in the community for similar services by
lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S.

886, 895 n.11 (1984).  Thus, "the court uses the hourly rates employed in the district in which the

reviewing court sits in calculating the presumptively reasonable fee."  Weather v. City of Mount

Vernon, No. 08 Civ. 192, 2011 WL 2119689, at *2 (S.D.N.Y. May 27, 2011) (internal quotation

marks and citations omitted).  "Courts should rely on both evidence submitted by the parties as to

the rates they typically charge, and [the court's] own knowledge of comparable rates charged by

lawyers in the district."  Id. (internal quotation marks and citations omitted).  Moreover, "current

rates, rather than historical rates, should be applied in order to compensate for the delay in

payment[.]"  LeBlanc-Sternberg, 143 F.3d at 764 (citing Missouri v. Jenkins, 491 U.S. 274, 283-

84 (1989).  In calculating the presumptively reasonable fee, courts should bear in mind that

"[t]he reasonable hourly rate is the rate a paying client would be willing to pay," and that "a

reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."

Arbor Hill, 522 F.3d at 190.

    Plaintiff's attorney, Peter H. Cooper, seeks an hourly rate of $400.  "A reasonable starting

point for determining the hourly rate for purposes of a [presumptively reasonable fee] calculation

is the attorney's customary rate."  Parrish v. Sollecito, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y.

2003).  In the Proposed Findings, Plaintiff states that Cooper's billable rate is $400 per hour, and

he provides the invoice for legal services for this matter which reflects this hourly rate.  Proposed

Findings at 7; Cooper Decl. Ex. B.  Moreover, Plaintiff notes that Cooper was admitted to the

Southern District of New York in July, 1997, has litigated cases "from inception through

disposition" in all levels of New York state courts, as well as in the federal district courts in the

Southern and Eastern Districts of New York.  Proposed Findings at 6-7.  Cooper "began his

career as a litigation associate with the firm Martin, Clearwater and Bell," and "[s]ince 2009, he

has been a partner at Cilenti & Cooper, which focuses on employment matters." Id. at 7.[9]  The
Court finds that Cooper's hourly rate is reasonable and in line with prevailing market rates in this
District.  See, e.g., Apolinario v. Luis Angie Deli Grocery Inc., No. 1:14–cv–2328–GHW, 2015
WL 4522984, at *3 (S.D.N.Y. July 27, 2015) ("In recent years, courts in this district have
awarded rates between $350 and $450 per hour for partners with significant employment
litigation experience.") (collecting cases); Gurung v. Malhotra, 851 F.Supp.2d 583, 597
(S.D.N.Y. 2012) ("Courts in this District have determined in recent cases that the range of
appropriate fees for experienced civil rights and employment law litigators is between $250 and
$450.").

### b.   Reasonableness of Hours Expended

In determining the number of hours reasonably expended, a court must consider both the
"contemporaneous time records . . . [that] specify, for each attorney, the date, hours expended,
and nature of the work done," New York State Ass'n for Retarded Children v. Carey, 711 F.2d
1136, 1148 (2d Cir. 1983), as well as "its own familiarity with the case and its experience with
the case and its experience generally as well as . . . the evidentiary submissions and arguments of
the parties." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotation marks and
citation omitted).  Moreover, in determining the number of hours that were reasonably expended
on the litigation, the court has discretion to "trim fat," or reduce the total number of hours
claimed to have been spent.  Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992)
(citations omitted).  Where a plaintiff submits deficient or incomplete billing records

---

[9] Although Plaintiff does not provide an affidavit from Cooper, attesting to Cooper's qualifications, the law firm's
website notes that Cooper graduated from law school in 1995, was admitted to the New York Bar in 1996, is
admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York, and
notes that Cooper "has litigated cases before every trial and appellate court in the State of New York, including the
State's highest court, the Court of Appeals." Cilenti & Cooper, PLLC, http://www.wagefirm.com/attorney-bios.html
(last visited Oct. 2, 2015).

demonstrating the number of hours expended, courts may reduce the fee award requested. <u>See</u> <u>Hensley</u>, 461 U.S. at 437 n.12 (an attorney seeking a fee award must, at least, "identify the general subject matter of his [or her] time expenditures").  The court may also exclude "excessive, redundant or otherwise unnecessary hours" from the calculation, <u>Quarantino v.</u> <u>Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999), or may make an across-the-board reduction in the number of hours for which fees will be awarded. <u>See</u> <u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 117 (2d Cir. 1997).  In determining the amount of hours reasonably expended on a case, "the relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted).

Although the total number of hours spent by Cooper for which Plaintiff seeks compensation – 24.3 hours – was reasonable to accomplish what needed to be done to achieve success for Plaintiff, the Court is nonetheless compelled to recommend a reduction in the number hours for which fees should be awarded.  Plaintiff seeks to recover fees for 3.5 hours of time that Cooper spent to "Attend status conference in SDNY" on April 30, 2015.  Cooper Decl. Ex.  B. The Court's electronic recording of the conference, however, evidences that the conference lasted a mere <u>5 minutes</u> (which rounds up to .1 hour).  To the extent that Plaintiff seeks to recover for counsel's travel time to and from the courthouse, the Court recommends awarding 1.5 hours of time for roundtrip travel between counsel's office in midtown Manhattan and the courthouse in White Plains.  Thus, Plaintiff may recover fees for only 1.6 hours of time on April 30, 2015.  In addition, although "it is within the Court's discretion to compensate counsel for travel time at full hourly rates, courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates." <u>Wilder v. Bernstein</u>, 975 F. Supp. 276, 283 (S.D.N.Y. 1997) (citations

omitted); see also, e.g., Davis v. City of New York, 10 Civ. 699, 2011 WL 4946243, at *6

(S.D.N.Y. Oct. 18, 2011) ("Courts in this district typically allow for travel time at fifty

percent."); In re Painewebber Ltd. P'ships Litig., No. 94 Civ. 8547, 2003 WL 21787410, at *4

(S.D.N.Y. Aug. 4, 2003) ("[W]hen determining attorneys' fees, courts in the Southern District of

New York generally do not credit travel time at the attorney's full hourly rate and customarily

reduce the amount awarded for travel to at least 50% of that rate.").  Consequently, the Court

recommends that counsel's travel time be compensated at the rate of $200 per hour.[10]

Accordingly, Plaintiff is entitled to recover fees at Cooper's full hourly rate for 20.9 hours

of time (24.3 hours of time billed by Cooper minus 3.4 hours of time billed at the full hourly rate

for the April 30, 2015, court conference), and at 50% of Cooper's full hourly rate for 1.5 hours of

time (for travel to and from that conference).

Based on the foregoing, I conclude, and respectfully recommend that Your Honor should

conclude, that Plaintiff should be awarded attorneys' fees totaling $8,660 ($400/hour x 20.9

hours=$8,360, plus $200/hour x 1.5 hours=$300).

## 2.   Costs

The FLSA and the NYLL allow for the recovery of costs in addition to attorneys' fees.

See 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a); Section II.G.1., supra.  Costs included in an

attorneys' fee award are "those reasonable out-of-pocket expenses incurred by attorneys and

ordinarily charged to their clients." LeBlanc-Sternberg, 143 F.3d at 763 (internal quotation

marks and citation omitted).  The costs incurred in this case, $400 in filing fees and $181 in

---

[10] The undersigned notes that Plaintiff's counsel likewise billed 3 hours for time spent to "Prepare for Conference; attend" on March 20, 2015.  Cooper Decl. Ex. B.  The docket sheet states that a show cause hearing was held before Your Honor on March 20, 2015, after which the matter was referred to the undersigned for an inquest on damages. It is unclear whether any of counsel's time billed on that date is attributable to travel to and from the courthouse in White Plains.

service fees, which are included in the invoice for legal services, <u>see</u> Cooper Decl. Ex. B[11], are reasonable and are the types of costs that have been allowed in FLSA/NYLL cases. <u>See</u> <u>Apolinario</u>, 2015 WL 4522984, at *4 (collecting cases).

Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff should be awarded $581 in costs.

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that a default judgment should be entered against Defendants in the amount of $85,080.60 – (1) $75,839.60 ($42,682.30 in compensatory damages and $33,157.30 in liquidated damages); (2) $8,660 in attorneys' fees; and (3) $581 in costs – plus pre-judgment interest at the rate of 9% per annum from August 28, 2011, until the date of entry of judgment, and post-judgment interest calculated in accordance with 28 U.S.C. § 1961.

Plaintiff shall serve Defendants with a copy of this Report and Recommendation, including copies of any unpublished decisions cited herein, at their last known addresses, and shall file appropriate proof of service.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, <u>see</u> Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Cathy Seibel, United States District Judge, at the United States Courthouse, 300 Quarropas Street, White

---

[11] Plaintiff has also provided a copy of the invoice from the process server. Cooper Decl. Ex. B.

Plains, New York 10601, and to the chambers of the undersigned at the United States

Courthouse, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel and

should not be made to the undersigned.

Dated: October    2015
        White Plains, New York

                              **Respectfully submitted,**


                              Lisa Margaret Smith
                              United States Magistrate Judge
                              Southern District of New York